# EXHIBIT A



666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

February 18, 2025                                               BOP-OGC-EFOIA-S@BOP.GOV

Federal Bureau of Prisons
FOIA/PA Section
Office of General Counsel, Room 924
320 First Street, N.W.
Washington, DC 20534

**Subject: Freedom of Information Act Request to the Federal Bureau of Prisons**

Dear FOIA Officers,

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and applicable agency regulations, the Center for Constitutional Rights ("CCR") submits the following request ("Request") for records from the Federal Bureau of Prisons ("BOP"). We ask that the BOP direct this request to all appropriate offices, components and custodians, including but not limited to: Field Offices, the Office of General Counsel, the Program Review Division, the Correctional Programs Division, the Women and Special Populations Branch, Health Services Division, Information Technology and Data Division, the Office of the Director, and the Deputy Director.

### A. The Requester

The Center for Constitutional Rights ("CCR") is a non-profit, public-interest legal and advocacy organization that engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around gender and LGBTQIA+ justice and prisoners' rights. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current gender justice and LGBTQIA+ rights law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments. CCR operates a website, http://ccrjustice.org, which addresses the issues on which CCR works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to gender and LGBTQIA+ justice, civil liberties, and prisoners' rights. In addition, CCR regularly issues press releases, has an active social media presence with thousands of followers, and issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work. CCR publishes and distributes the Jailhouse Lawyers Handbook, a self-help legal manual for incarcerated people to challenge rights violations and abuses.

### B. Definitions:

**BOP.** In this Request, the term "BOP" means the Federal Bureau of Prisons and each of its divisions, departments, and components, including but not limited to: Field Offices, the Office of General Counsel, the Program Review Division, the Correctional Programs Division, the Women and Special Populations Branch, Health Services Division, Information Technology and Data

Division, the Office of the Director, and the Deputy Director, secretaries, directors, commissioners, employees, agents, representatives, consultants, contractors, personnel, and any other person authorized to act on its behalf.

**Communication(s).** In this Request, the term "communication" means the transmittal of information (in the forms of facts, ideas, inquiries or otherwise), including but not limited to emails, texts, and/or any other type of electronic communication.

**Gender Ideology Executive Order.** In this Request, the term "Gender Ideology Executive Order" means President Donald J. Trump's Executive Order titled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (January 20, 2025) ([Link](Link)).

**Designated Healthcare.** In this Request, the term "Designated Healthcare" means (i) hormone therapy or hormone replacement therapy (i.e. testosterone, progesterone, progestins, estrogen, estradiol, spironolactone) regardless of the underlying diagnosis; (ii) group or individual therapy or counseling regardless of the underlying diagnosis; (iii) hair removal treatment (i.e. electrolysis, facial removal) regardless of the underlying diagnosis; (iv) surgical care in the form of vaginoplasties, phalloplasties, mastectomies, hysterectomies, breast augmentations, breast reconstruction surgery, facial reconstruction surgeries, or orchiectomies, regardless of the underlying diagnosis; (v) treatment for gender dysphoria regardless of the form, including social transition care (i.e. use of preferred pronouns, honorifics, and/or access to male or female grooming or commissary items).

**PREA Implementation.** In this Request, "PREA Implementation" means the Prison Rape Elimination Act of 2003, 34 U.S.C. Ch. 303, the accompanying regulations found at 28 C.F.R. Part 115, and any and all BOP policies, directives, guidance, program statements or records regarding or implementing the same.

**Record(s).** In this Request, the term "record(s)" includes, but is not limited to, all records or communications preserved in electronic (including metadata) or written form, such as correspondences, emails, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, legal opinions, protocols, reports, rules, talking points, technical manuals, technical specifications, training manuals, studies, or any other record of any kind.

**Transgender Persons.** In this Request, the term "Transgender Persons" means inmates in the custody of BOP with any of the following: (1) a diagnosis of gender dysphoria, (2) a completed Case Management Activity (CMA) SENTRY Assignment Consent Form for Transgender Inmates (BP-A1110), or (3) whose gender identity otherwise differs from their sex assigned at birth, including (a) transgender women who self-identify as women/female but whose sex assigned at birth is male, (b) transgender men who self-identify as men/male but whose sex assigned at birth is female, (c) non-binary people whose self-identification is neither male nor female

**Intersex Persons.** In this Request, the term "Intersex Persons" means intersex people who have one or more innate sex characteristics, including genitals, internal reproductive organs, and chromosomes, that fall outside of traditional conceptions of male or female bodies.

### C. Requested Records and Communications

CCR requests the following records beginning on January 20, 2025 to Present (i.e. the date when searches commence):

1. Policies, directives, guidance, program statements or forms that have been issued, amended, revised, updated, rescinded or withdrawn since January 20, 2025 related to the following:
    - i. The Gender Ideology Executive Order (*as defined above*)
    - ii. Transgender Persons or Intersex Persons (*as defined above*)
    - iii. Designated Healthcare (*as defined above*)
    - iv. PREA Implementation (*as defined above*)
    - v. Transgender Executive Council (TEC)
    - vi. Women and Special Populations Branch
    - vii. Case Management Activity (CMA) SENTRY Assignment Consent Form for Transgender Inmates (BP-A1110)
    - viii. Program Statement 5200.04, Transgender Offender Manual
    - ix. Program Statement 5324.12: Sexually Abusive Behavior Prevention and Intervention Program
    - x. Program Statement 5100.08 Security Designation and Custody Classification Manual
    - xi. Program Statement 5290.15 Intake Screening
    - xii. Program Statement 5310.12 Psychology Services Manual
    - xiii. Program Statement 5310.16 Treatment and Care of Inmates with Mental Illness
    - xiv. Program Statement 5322.13 Inmate Classification and Program Review
    - xv. Program Statement 5324.08 Suicide Prevention
    - xvi. Program Statement 5324.12 Sexually Abusive Behavior Prevention and Intervention Program
    - xvii. Program Statement 5521.06 Searches of Housing Units, Inmates, and Inmate Work Areas
    - xviii. Program Statement 5800.15 Correctional Systems Manual
    - xix. Program Statement 6031.04 Patient Care
    - xx. Program Statement 6090.04 Health Information Management

2. Any and all records related to the implementation, interpretation, and/or enforcement of the Gender Ideology Executive Order within the BOP since January 20, 2025, including without limitation as related to:
    - i. the items listed in Request #1 i-xx.
    - ii. housing placements or transfers of Transgender Persons or Intersex Persons.
    - iii. commissary access for Transgender Persons or Intersex Persons.
    - iv. pat downs or searches of Transgender Persons or Intersex Persons.
    - v. Records containing any of the following words and/or terms:
        - ■ trans

3

- transgender
- intersex
- gender identity
- gender ideology
- biological sex
- biological male
- biological female
- biologically male
- biologically female

3. Any and all communications related to the implementation, interpretation, and/or enforcement of the Gender Ideology Executive Order within the BOP since January 20, 2025, including without limitation as related to:
   i. the items listed in Request #1 i-xx.
   ii. housing placements or transfers of Transgender Persons or Intersex Persons.
   iii. commissary access for Transgender Persons or Intersex Persons.
   iv. pat downs or searches of Transgender Persons or Intersex Persons.
   v. Communications containing any of the following words and/or terms:
   - trans
   - transgender
   - intersex
   - gender identity
   - gender ideology
   - biological sex
   - biological male
   - biological female
   - biologically male
   - biologically female

### D. Request for Expedited Processing

CCR requests expedited processing of this FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(1)(iv), as the requested information concerns matters of widespread public interest and urgency related to federal policy changes impacting civil rights, healthcare access, and gender-related protections. Specifically, this request is of urgent national importance as it concerns the immediate well-being and safety of incarcerated transgender and intersex individuals who are uniquely vulnerable to abuse, harassment, and violence in correctional facilities. The implementation of the Gender Ideology Executive Order has already sparked widespread concern from legal experts, civil rights organizations, and journalists regarding its potential impact on prisoner safety, medical care, and due process protections. Of the more than 140,000 people in federal prisons and jails, about 2,000—roughly 1%—identify as transgender, highlighting the significant impact of policy changes on this population. Anna Flagg, *Trump's Prison Policy on Transgender People Could Affect Thousands Behind Bars*, The Marshall Project (Jan. 23, 2025), https://www.themarshallproject.org/2025/01/23/trump-order-transgender-prison. Recent publications also highlight the heightened risks transgender prisoners face in correctional settings, particularly in men's prisons. *See, e.g.*, Chinyere Ezie & Richard Saenz, *Abuse and Neglect of Transgender People in Prisons and Jails: A Lawyer's Perspective*,

PLI Chronicle (2020), Chinyere Ezie, *Dismantling the Discrimination to Incarceration Pipeline for Trans People of Color,* 19:2 UNIV. OF ST. THOMAS L.J. 277 (2023).

Given the immediate and life-threatening impact that sudden policy changes can have, it is imperative that the public have timely access to records detailing how the BOP is interpreting and enforcing this Executive Order. The requested records will serve a critical public interest as thousands of Americans—including legal professionals, advocates, policymakers, and concerned citizens—are actively seeking clarity on how federal agencies are shaping policies that affect vulnerable incarcerated populations. Without prompt disclosure, public debate and oversight will be hindered, and the individuals most impacted by these policies will remain in potentially dangerous and unlawful conditions without the ability to advocate for their rights. As such, expedited processing of this request is essential to ensuring transparency, accountability, and the protection of human rights in the federal prison system.

The requested information also falls under 28 CFR 16.5(e)(1)(i), as not receiving these records will very likely "pose an imminent threat to the life or physical safety" of multiple individuals. Accordingly, CCR requests an expedited processing determination within 10 days of the receipt of this FOIA Request on the ground that there is an immediate and compelling need for the information.

### E. Request for Fee Waiver

CCR requests a waiver of all fees associated with this Request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). CCR is a nonprofit organization (see Section A of this Request) seeking the requested information in the public interest and not for any commercial purposes. The release of these records will contribute significantly to public understanding of government operations, as noted above in Section D, including CCR's extensive network of over 50,000 supporters which further underscores the broad and urgent demand for transparency regarding these policies.

Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case, therefore, meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requesters.'") (citing *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987)).

In the alternative, if no fee waiver is granted and the fees exceed $250.00, please contact CCR's undersigned representative to obtain consent to incur additional fees. Processing fees should be limited pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media").

### F. Preferred Format and Delivery

CCR requests that records be provided in electronic format (PDF or machine-readable format) and delivered via email to cezie@ccrjustice.org. If the volume of responsive records is too large for email transmission, please provide them via a secure file-sharing service.

If our Request is denied, in whole or in part, we ask that each agency justify all deletions by reference to specific exemptions to FOIA. We also expect each agency to release all segregable portions of otherwise exempt material.

**CONCLUSION**

Thank you for your prompt attention to this request. We look forward to your response. If you require clarification or anticipate any delay, please contact us promptly at cezie@ccrjustice.org.

Sincerely,

_____
A. Chinyere Ezie
Senior Staff Attorney
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Email: cezie@ccrjustice.org